```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/2/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEIRO JOSE ABREU BAUTISTA,

        Plaintiff,

-against-

ANGEL LUIS PAGAN-RODRIGUEZ, et al.,

        Defendants.

24-CV-00631 (JMF) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

After requesting a judicially supervised settlement conference, and then assuring the Court that their representative at the conference would be "a decision-maker with . . . responsibility for determining the amount of any ultimate settlement," defendants Angel Luis Pagan-Rodriguez and PFG Transco, Inc. (PFG) violated this Court's Order Scheduling Settlement Conference (Scheduling Order) (Dkt. 70) by appearing at the conference with a representative who had no authority to negotiate beyond a "hard line" established in advance. Because defendants' conduct violated the unambiguous terms of the Scheduling Order, and because their failure to send a representative with real settlement authority rendered them unprepared for the conference, sanctions are appropriate pursuant to Fed. R. Civ. P. 16(f)(1)(B) and (C). For the reasons that follow, defendants will be required to pay the sum of $500 to plaintiff Julio A. Monserrate.

## Background

In their respective complaints, plaintiffs Monserrate and Yeiro Jose Abreu Bautista allege that they sustained personal injuries on March 16, 2023, when a tractor-trailer driven by Mr. Pagan-Rodriguez and owned by PFG collided with the automobile that Mr. Monserrate was driving, in which Mr. Bautista was a passenger.[1] Discovery closed on February 25, 2025. (Dkt. 64.) On

---

[1] Monserrate and Bautista initiated separate lawsuits in state court. Both cases were removed to this Court, on diversity grounds, and thereafter consolidated. (*See* Dkt. 8.)

February 18, 2025 – at defendants' request, and over the objection of plaintiff Monserrate – the district judge referred the case to me for a settlement conference. (Dkts. 66, 68.)

On February 28, 2025, I issued the Scheduling Order, which set the settlement conference for April 14, 2025, and required that each party "attend the settlement conference in person, accompanied by that party's lead trial attorney," Sched. Order ¶ 1, and that a corporate party send "a decision-maker with knowledge of the case and responsibility for determining the amount of any ultimate settlement; that is, a person who decides what settlement authority to give to counsel, not a person who has received, or must seek, authority from someone else within the organization." *Id*. ¶ 1(a). The Scheduling Order warned that "[i]f a party fails to attend the settlement conference with all of the required persons, that party may be required to reimburse the other parties for their time and travel expenses or face other sanctions," *id*. ¶ 1(d), and required that any requests to modify the attendance requirements be made by letter-motion. *Id*. ¶ 6. The Scheduling Order also required the parties to exchange good-faith settlement demands, and submit confidential settlement letters to the Court, in advance of the conference. *Id*. ¶¶ 2-3.

On April 2, 2025, defendants requested, by letter-motion, that their client representative – identified as Michelle Zonick of CorVel Corporation (CorVel), PFG's third-party claims administrator – be allowed to attend the conference virtually, because she resides in California. (Dkt. 76.) On April 3, 2025, plaintiff Monserrate opposed the motion, arguing that since CorVel is a large corporation, it was unlikely that Ms. Zonick was the only qualified "decision-maker" who could attend the conference. (Dkt. 77.) On April 4, 2025, defendants withdrew their motion, advising the Court that Jim Diez of CorVel would appear in person as defendants' client representative. (Dkt. 78.) The parties then submitted their confidential settlement letters, which revealed a very significant gap between their positions, and their Acknowledgment Forms, in

which their counsel certified that all required attendees would participate in the conference. Defendants' Acknowledgment Form – signed by their counsel of record, Peter Caccamo-Bobchin – identified Mr. Diez as their client representative and certified that he was "a decision-maker with . . . responsibility for determining the amount of any ultimate settlement."

Because the parties' settlement positions were so far apart, I conducted a pre-settlement conference call with counsel on April 9, 2025. During that call, counsel for all parties assured me that, notwithstanding their pre-conference positions, they were prepared to negotiate in good faith and believed that the April 14 conference could be productive. During the same call, I reiterated to defendants' counsel the requirement, set forth in the Scheduling Order, that defendants' client representative be a decision-maker with full authority – not merely a messenger for an absent corporate decision-maker. Counsel indicated that he understood that requirement.

On April 10, 2025, Mr. Caccamo-Bobchin submitted a supplemental confidential settlement letter in which he advised the Court that he had conferred further with defendants, who were taking a "very hard line" in their evaluation of the case for settlement purposes and were "looking at the case as being under" a certain figure. Although that figure was slighter larger than the pre-conference offer that defendants had made to plaintiffs, it still left a very significant gap between the parties' positions. What counsel's letter did *not* disclose was that Mr. Diez's authority would extend *only* to the figure that defendants were "looking at the case as being under." Consequently, the conference proceeded as scheduled on April 14, 2025.

Both plaintiffs appeared at the conference in person, along with their attorneys of record. Defendants appeared through Mr. Caccamo-Bobchin and Mr. Diez. During the initial joint session, counsel for all parties reiterated that they were prepared to negotiate in good faith. During the first caucus with defendants, however, Mr. Diez advised the Court that the figure referenced in Mr.

Caccamo-Bobchin's April 10 letter was not merely defendants' pre-conference view of the value of the case; it was a pre-set limit, given to him by PFG and CorVel, beyond which he had no authority to negotiate, regardless of what facts or analysis were presented to him during the conference. Consequently, once plaintiffs declined to settle the case at that figure (which they did immediately upon hearing the "take it or leave it" offer), the conference could not proceed.

Before adjourning, the Court placed the facts summarized above on the record, and Mr. Diez confirmed – also on the record – that he had no settlement authority beyond the pre-set limit he had been given. The Court then directed defendants to show cause in writing what they should not be sanctioned pursuant to Fed. R. Civ. P. 16(f)(1)(B) and/or (C) for failing to obey ¶ 1(a) of the Scheduling Order and, as a result, being substantially unprepared to participate in the settlement conference in good faith. (Dkt. 83.)

In response to the order to show cause, defendants' counsel wrote:

> As counsel I am not involved in the process of deciding the case valuation or settlement authority in PFG cases. I have been advised that the authority possessed by Mr. Diez at the settlement conference was the actual settlement authority, and that because of the process utilized by CorVel and PFG, which involves multiple people coming to a consensus, a PFG representative would have had the same authority as Mr. Diez.

(Dkt. 84 at 3.) Additionally, counsel advised the Court that *following* the settlement conference, PFG extended additional settlement authority "directly to our office" as to plaintiff Bautista, and "[d]iscussions are ongoing." *Id*. Defendants did not explain why they did not advise the Court of Mr. Diez's limited authority prior to the conference and/or seek a modification of the requirements set forth in the Scheduling Order.

In response to defendants' submission, plaintiff Monserrate pointed out that he was opposed to scheduling the settlement conference precisely because he doubted that defendants would approach settlement in good faith. He then wrote, "If defendants' counsel had told plaintiff

4

the truth, which was that the carrier was not willing to negotiate and wanted to make plaintiff a take it or leave it offer, plaintiff's counsel would have written a letter to the Court requesting [that] the settlement conference be cancelled." (Dkt. 86 at 2.)

Plaintiff Bautista did not respond to the order to show cause. [2]

## Discussion

Rule 16(f) of the Federal Rules of Civil Procedure authorizes a district court, "[o]n motion or on its own," to issue "any just orders" if a party or its attorney "fails to appear at a scheduling or other pretrial conference," is "substantially unprepared to participate – or does not participate in good faith – in the conference," or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(A)-(C). "These provisions apply fully to pretrial settlement conferences." *Lopez v. New York City Department of Educ*., 2023 WL 12078787, at *3 (S.D.N.Y. May 4, 2023), *objections overruled,* 2025 WL 1224315 (S.D.N.Y. Apr. 28, 2025); *see also*, *e.g.*, *Thrane v. Metropolitan Transp. Auth*., 2018 WL 840043, at *3-4 (E.D.N.Y. Feb. 12, 2018) (sanctioning defendant for failing to send "someone with full settlement authority" to judicially supervised settlement conference as required by magistrate judge's scheduling order); *Kerestan v. Merck & Co. Long Term Disab. Plan*, 2008 WL 2627974, at *1 (S.D.N.Y. July 2, 2008) (sanctioning plaintiff because his "guardian/conservator did not appear at the settlement conference as ordered," leaving counsel "without a client or authorization to proceed with settlement").

No showing of bad faith is required to impose sanctions under Rule 16(f)(1)(C). *Hamilton Int'l Ltd. v. Vortic LLC*, 2018 WL 5292128, at *2 (S.D.N.Y. Oct. 25, 2018). "The fact that a pretrial order was violated is sufficient to allow some sanction." *Mahoney v. Yamaha Motor Corp. U.S.A.*,

---

[2] On April 23, 2025, Bautista's attorney advised the Court that "this case has settled as to our client only." (Dkt. 85.)

290 F.R.D. 363, 366-67 (E.D.N.Y. 2013) (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1531 (3d ed. 2010)). Moreover, "[b]ecause sanctions pursuant to Rule 16(f) fall within the scope of pretrial matters, magistrate judges are well within their authority to impose such sanctions." *Grenion v. Farmers Ins. Exch.*, 2014 WL 1284635, at *4 (E.D.N.Y. Mar. 14, 2014).

It is well-established that "a court cannot force litigants to settle an action," *Bulkmatic Transp. Co. v. Pappas*, 2002 WL 975625, at *2 (S.D.N.Y. May 9, 2002), nor sanction them for "failing to make or accept a settlement offer." *Grenion*, 2014 WL 1284635, at *4. A court may, however, require that the attorneys and/or client representatives attending a settlement conference possess actual settlement authority, and impose sanctions if – as in this case – it becomes clear that they do not. *See*, *e.g.*, *Negron v. Woodhull Hosp.*, 173 F. App'x 77, 79 (2d Cir. 2006) (summary order) (district court "properly required that the Hospital pay the expenses incurred in preparing for the mediation" after finding that it violated the court's mediation order "by failing to bring a principal party with settlement authority to the mediation"); *Lopez*, 2023 WL 12078787, at *4 (sanctioning defendant DOE because neither its counsel nor the two client representatives who accompanied counsel to the settlement conference "had the authority to increase DOE's pre-conference offer without approval from [counsel's] absent supervisor"); *Thrane*, 2018 WL 840043, at *3, 4 n.7 (holding that defendants were properly sanctioned pursuant to Rule 16(f)(1)(B) and (C) after violating the magistrate judge's settlement conference order by sending a representative who was instructed by his superior "not to budge from the initial offer"); *Hamilton Int'l*, 2018 WL 5292128, at *2 (S.D.N.Y. Oct. 25, 2018) (sanctioning plaintiff Hamilton for failing to produce its pre-designated corporate representative and instead producing a substitute representative, whose settlement authority was questionable); *Grenion*, 2014 WL 1284635, at *6 (sanctioning defendant

6

Farmers for "dispatch[ing] a representative" who "lack[ed] authority to change the settlement position of the corporation").

A corporate defendant – like an individual defendant – is of course free to take a "hard line" during settlement negotiations. But it is not free to waste the time and resources of the Court and the opposing parties by staffing a settlement conference with a representative who has no authority to step over a pre-set line established by others. *Lopez*, 2023 WL 12078787, at *4; *Thrane*, 2018 WL 840043, at *4; *see also Grenion*, 2014 WL 1284635, at *6 (Farmers was "within its rights" to refuse to make a settlement offer, but its decision to send a representative with "illusory 'settlement authority'" to the conference, who "lacked the authority to change Farmers' position," was "out-of-bounds").

In this case, as in *Lopez*, *Thrane*, and *Grenion*, defendants were expressly required to send a representative with full authority. *See* Sched. Order ¶ 1(a) (defendant must send "a decision-maker" with "responsibility for determining the amount of any ultimate settlement"). Mr. Caccamo-Bobchin reaffirmed that obligation when he signed the Acknowledgment Form, certifying, in writing, that Mr. Diez was "a decision-maker with . . . responsibility for determining the amount of any ultimate settlement." At the conference, however, Mr. Diez conceded that his authority was subject to a rigid, pre-set limit – a fact not previously disclosed to the Court. As in *Thrane*, Mr. Diez had been instructed, in advance, "not to budge" from his first (and only) offer made at the conference. 2018 WL 840043, at *3. By failing to send a representative with genuine settlement authority, as directed by the Court, defendants violated the Scheduling Order, which warrants sanctions pursuant to Rule 16(f)(1)(C), and were "substantially unprepared to participate" in the conference, which warrants sanctions pursuant to Rule 16(f)(1)(B).

The Court understands that settling a lawsuit on behalf of a corporation may involve more

than one decision-maker, and that a corporation in PFG's position may be unwilling to grant its representative the full authority required by the Scheduling Order. However, as Chief Judge Swain recently explained, "compliance with an internal policy does not excuse non-compliance with a Court order." *Lopez*, 2025 WL 1224315, at *4; *see also Grenion*, 2014 WL 1284635, at *6 (a company "cannot implement an internal process or policy that excuses it from compliance with court orders"). "If it was not possible for [PFG] to comply with both the Scheduling Order and its internal policy, it should have notified the Court and requested a modification of the order prior to the Settlement Conference." *Lopez*, 2025 WL 1224315, at *4. This would have permitted the Court – and the plaintiffs – to consider whether it was a good use of their resources, under the circumstances, to proceed with the conference.

The Court further understands that there is no guarantee that the case would have settled at the conference had Mr. Diez been given full authority. As noted above, the parties were far apart, and even a fully-authorized PFG representative, after discussing the matter in good faith with the plaintiffs and the magistrate judge, may have declined to offer a figure acceptable to one or both plaintiffs. It is well-settled, however, that "no harm, no foul" is not a defense to Rule 16(f)(1) sanctions. *See Hamilton Int'l*, 2018 WL 5292128, at *2-3 (rejecting "no harm, no foul" defense because "[t]he Court expects parties to comply with its orders").

## Conclusion

In *Lopez*, the court imposed sanctions of $1,100 upon the DOE for failing to send a representative with "full authority" to the settlement conference. 2023 WL 12078787, at *6.[3] In *Thrane*, the magistrate judge whose order was violated initially assessed a sanction of $250. 2018

---

[3] $1,000 was payable to the Clerk of Court, as a fine, and the remaining $100 was payable to the pro se plaintiff, who did not incur any attorneys' fees but was "required to travel to Manhattan from his home in New Jersey" for the settlement conference. *Lopez*, 2023 WL 12078787, at *6.

8

WL 840043, at *4. After defendants filed a "baseless objection" to that decision, "further wast[ing] the time and resources of the Court and the plaintiff," the district judge increased the sanction to $1,000, payable to plaintiff's counsel. *Id.* at *4. In *Grenion*, the court ordered defendant to pay $4,185 to plaintiff's counsel, representing attorneys' fees and other expenses incurred as a result of the misconduct, and another $4,185 to the Clerk of Court. 2014 WL 1284635, at *9-10 (noting that "[a] monetary penalty paid to the court has the added benefit[] of . . . helping to offset the costs imposed on public institutions by dilatory conduct").

Here, plaintiff Monserrate seeks to "recoup all reasonable fees and costs incurred in preparing for and attending the mediation." (Dkt. 86 at 2.) However, the remedy he proposes would require additional proceedings (at a minimum, an application by plaintiff, substantiating his claimed fees and expenses, and an opportunity for defendants to respond). Given the procedural posture of the case,[4] the Court is reluctant to divert the remaining parties' resources for this purpose. Moreover, in this case, unlike *Lopez*, *Thrane*, and *Grenion*, defendants' representative did possess *some* authority – which he exercised – to improve upon defendants' pre-conference settlement offer. On these facts, the Court concludes that a $500 sanction – which will at least partially compensate plaintiff Monserrate and his counsel for their time and expenses incurred in preparing for and attending the settlement conference – is the appropriate remedy for defendants' violation of the Scheduling Order. The sanction is payable to Monserrate and due within 30 days.

Dated: New York, New York  
      May 2, 2025

**SO ORDERED.**

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**

---

[4] Plaintiff Bautista, as noted above, has settled. The remaining parties are engaged in vigorous pretrial motion practice. (*See* Dkts. 72, 73-75, 80-81, 82, 87-93.)