UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
YEIRO JOSE ABREU BAUTISTA et al.,                                      :
                                                                       :
                              Plaintiffs,                              :
                                                                       :    24-CV-631 (JMF)
            -v-                                                        :
                                                                       :    OPINION AND ORDER
ANGEL LUIS PAGAN-RODRIGUEZ et al.,                                     :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Trial in this action, familiarity with which is presumed, is scheduled to begin on October 20, 2025.  *See* ECF No. 100.[1]  This opinion addresses a *Daubert* motion and motion *in limine* filed by Defendants Angel Luis Pagan-Rodriguez and PFG Transco, Inc., *see* ECF Nos. 73, 87, and a motion *in limine* filed by Plaintiff Julio A Monserrate Rivera, *see* ECF No. 91.[2]  For the reasons that follow, Defendants' *Daubert* motion and motion *in limine* are GRANTED, and Monserrate's motion *in limine* is DENIED.

---

[1]    As the Court explained at the March 13, 2025 pretrial conference, the trial in this action is third in a queue of trials scheduled to begin on October 20, 2025, behind 23-CR-622 and 21-CV-2174.  Commencement of the trial on October 20, 2025, is thus contingent on cancellation or adjournment of these two other scheduled trials.  If the parties desire more certainty as to a trial date, they may want to consider consenting to the jurisdiction of the assigned Magistrate Judge for all purposes using the form for that purpose available on the Court's website.

[2]    Defendants' *Daubert* motion seeks to exclude opinions expressed with respect to Plaintiff Yeiro Jose Abreu Bautista as well.  *See* ECF No. 75, at 7-8.  After they filed the motion, however, the parties settled all claims brought by Bautista.  *See* ECF No. 85.  The Court thus limits its ruling on the *Daubert* motion to the opinions expressed about Monserrate.

A.  *Daubert* Motion

The Court begins with Defendants' *Daubert* motion to exclude portions of the opinions provided by Monserrate's medical expert, Samuel Hess, and liability expert, Ali M. Sadegh.  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court emphasized the "gatekeeping role" of district courts with respect to expert testimony, declaring that "the Rules of Evidence — especially Rule 702 — . . . assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Id.* at 597; *see also Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 302 (S.D.N.Y. 2001) ("[The proffered testimony] must not only have a reliable foundation but also be relevant in that it 'fits' the facts of this case." (quoting *Daubert*, 509 U.S. at 591-92)).  "The Rule 702 inquiry is a flexible one that depends upon the particular circumstances of the particular case at issue."  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4077117, at *2 (S.D.N.Y. Aug. 1, 2016) (internal quotation marks omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-52 (1999) (explaining that because "there are many different kinds of experts, and many different kinds of expertise," a court must be granted

"considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").

The focus of the Court's analysis "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.  Ultimately, "expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (cleaned up). The Court should not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Nor should an expert be permitted to "supplant the role of counsel in making argument at trial," *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004), or be permitted to merely "construct[] a factual narrative based upon record evidence," *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09-CV-2227 (PAC), 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018).  Relatedly, expert testimony regarding "an ultimate determination that [is] exclusively within [the jury's] province," including witness credibility, must be precluded, *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005), as must expert testimony "on issues of law," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  Nevertheless, "[a]lthough a district court should admit expert testimony only where it is offered by a qualified expert and is relevant and reliable, exclusion remains the exception rather than the rule." *In re Gen. Motors*, 2016 WL 4077117, at *2 (internal quotation marks omitted); *see also Nimely*, 414 F.3d at 395 ("Rule 702 embodies a liberal standard of admissibility for expert opinions . . . .").

In this case, Defendants' two requests for exclusion of expert testimony on behalf of Monserrate are limited and persuasive.  Defendants move first to exclude testimony relating to

3

two paragraphs of Dr. Hess's report, *see* ECF No. 74-4 ("Hess Report"), at 5, in which Dr. Hess opines about Monserrate's need for future lumbar fusion surgery and cervical surgery, along with the estimated cost of such procedures.  *See* ECF 75 ("Defs.' Mem."), at 1, 7-9.  In those excerpts of the report, Dr. Hess opines that Monserrate "is likely to develop adjacent disc disease of the lumbar spine" and, as a result, "it is likely that he will require an extension of the current lumbar fusion to other levels at some point in his lifetime" — a surgical procedure that "is typically billed at an approximate cost of $300,000 for the surgeon and assistant" while "[f]acility and anesthesia are typically billed at approximately $200,000.00."  Hess Report 5.  Dr. Hess goes on to state that "[s]urgery may be required for [Monserrate's] cervical disc herniation in the near future, at an approximate cost of $300,000 for the surgeon and assistant," and "[f]acility and anesthesia are typically billed at approximately $200,000.00."  *Id.*

Defendants object that the medical opinions expressed by Dr. Hess in these portions of his report are unsupported by any reliable methodology or data and therefore must be excluded.  *See* Defs.' Mem. 8-9.  The Court agrees.  Dr. Hess states that his "conclusions are drawn from a thorough review of Mr. Monserrate's medical history, supported by [Dr. Hess's] education, training, and professional experience."  Hess Report 5.  Monserrate thus argues that Dr. Hess's opinion is reliable because it is "based on his many years of experience, medical records and physical examination of plaintiff."  ECF No. 81 ("Pl.'s Opp'n"), at 9.  But "[w]hile Plaintiff argues that [Dr. Hess's] opinion is based on his clinical experience, an expert relying solely on his experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Potter v. United States*, No. 17-CV-4141 (AJN), 2020 WL 2836440, at *7 (S.D.N.Y. May 30, 2020) (Nathan, J.) (cleaned up)); *see Bah v. Nordson Corp.*, No. 00-CV-9060 (DAB),

4

2005 WL 1813023, at *9 (S.D.N.Y. Aug. 1, 2005) ("[T]he trial court's gatekeeping function requires more than simply taking the expert's word for it." (quoting Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments)); *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) *aff,d*, 552 U.S. 312 (2008) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."). Dr. Hess fails to provide that kind of reasoned explanation. He cites no literature, and he provides no data to support his cost estimates. He does not even identify the kind of cervical surgery that Monserrate "may be required" to have. *See* Hess Report 5.[3]

As Defendants point out, Dr. Hess's statements are substantially similar to the expert testimony deemed inadmissible in *Guerreo v. Loiacono*, No. 19-CV-6239 (KAM) (SJB), 2024 WL 4766224 (E.D.N.Y. Nov. 13, 2024). In that case, the court excluded a medical expert's testimony regarding the plaintiff's "likelihood of future surgery due to adjacent segment degeneration" because the expert did not "explain how his conclusion . . . is connected to the existing facts or data," other than by stating that his opinions were based on the plaintiff's "medical history, medical records, and result from [the expert's] physical examination of [the] [p]laintiff." *Id.* at *7. To be sure, the medical expert's deposition testimony in that case further laid bare the shortcomings of his testimony, but the overarching problem present in both cases is that "although [the medical expert] may be basing his opinion on his experience, he fails to explain how such experience formed his opinion." *Id.* at *8.

---

[3] Making matters worse, Dr. Hess offers nearly an identical opinion — using almost identical language — as to Abreu Bautista, even though his treatment differed from Monserrate's. *See* Defs.' Mem. 9. Dr. Hess provides no explanation for why they are likely to need the exact same procedures.

5

Monserrate's responses are unpersuasive. Monserrate first cites three cases — including *Guerreo* — that purportedly stand for the proposition that medical experts are permitted to provide expert testimony "on the need . . . and the cost of future treatment based on their experience and without reliance on any particular peer reviewed articles or methodologies." Pl.'s Opp'n 8. But these cases say no such thing. *See Guerreo*, 2024 WL 4766224, at *8 (excluding medical-expert testimony for lack of reliable methodology); *Reichmann v. Whirlpool Corp.*, No. 16-CV-5151 (AYS), 2021 WL 12102128, at *1, 3 (E.D.N.Y. Mar. 9, 2021) (concluding that the defendants had not identified "deep-seated methodological flaws" but reiterating that courts must consider whether expert testimony is "grounded in sufficient facts or data"); *Qureshi v. Costco Wholesale Corp.*, No. 20-CV-4086 (PK), 2022 WL 16757952, at *1-2 (E.D.N.Y. Nov. 8, 2022) (concluding that the defendant had "not demonstrated that [the expert lifecare planner's] methodology was unfounded" but reiterating that courts must assess whether "scientifically valid" "reasoning or methodology" was properly "applied to the facts in issue"). Indeed, any such far-reaching principle is inconsistent with the well-known rule that courts should not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

Monserrate next argues that, as his treating physician, Dr. Hess is entitled to wide latitude to testify as to his personal observations. Pl.'s Opp'n 8-9. But Monserrate's own cited authority acknowledges that, "[a]lthough treating physicians may have an opinion as to the degree of injury in the future[,] there is a significant different between noting that an injury will not heal itself — something treating physicians tell patients every day" — and, for example, testifying that a "plaintiff will be a candidate for a revision surgical intervention to the cervical spine at a cost of $100,000 . . . as a result of the significant acceleration and worsening of symptomatic

6

herniations" — testimony that goes "beyond the scope of treating physician testimony." *Papiez v. Home Depot U.S.A., Inc.*, No. 15-CV-2845 (ERK) (RML), 2018 WL 11381738, at *6 (E.D.N.Y. Apr. 20, 2018); *cf. Mikulec v. Mercedes-Benz USA, L.L.C.*, No. 05-CV-6069 (JWF), 2009 WL 10681943, at *4 (W.D.N.Y. Sept. 29, 2009) (recognizing that a treating physician's testimony may include opinions about "causation, prognosis or permanency, as long as the opinions are based on information learned during the course of treatment"). Here, Dr. Hess offers expert testimony about the estimated cost of future surgical interventions to treat anticipated medical conditions. Measured against the applicable *Daubert* standards for expert testimony, that testimony falls short and thus must be excluded.[4]

Second, Defendants seeks to exclude Dr. Sadegh's opinion that, at the time of the alleged accident, Pagan was exhibiting a "chasing maneuver or a road rage." ECF No. 74-8, at 14. Here too, Defendants have the better argument. "Expert testimony that seeks to address lay matters, which a jury is capable of understanding without expert help, is not relevant and therefore not admissible." *United States v. Ulbricht*, No. 14-CR-68 (KBF), 2015 WL 413318, at *8 (S.D.N.Y. Feb. 1, 2015) (citing *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013)); *see United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001). Although Monserrate points to Dr. Sadegh's general experience in accident reconstruction, he also concedes that Dr. Sadegh's observation about Pagan's chasing maneuver or road rage was "a reasonable deduction" based on "the consistent switching of lanes, speeding, and demeanor of [Pagan]" reflected in the video evidence. Pl.'s Opp'n 11. The jury, however, is capable of observing the video evidence and drawing

---

[4] Monserrate also contends that Defendants' medical expert's opinions suffer from the same defects as Dr. Hess's and that "[w]hat is good for the goose should be good for the gander." Pl.'s Opp'n 9. But he cites no authority for the proposition that deficient testimony by one party justifies deficient testimony by another. And he forfeited his right to move to preclude the testimony of Defendants' medical expert by failing to file his own motion.

conclusions therefrom for itself. Thus, Dr. Sadegh's specialized knowledge will not "help the trier of fact understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). That limited portion of Dr. Sadegh's testimony is therefore inadmissible and properly excluded. *See Ulbricht*, 2015 WL 413318, at *8.[5]

Accordingly, Defendants' *Daubert* motion is GRANTED in full.

**B. Motions *in Limine***

That leaves the parties' dueling motions *in limine*. First, Monserrate moves, pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, for sanctions based on the alleged spoliation of dash-camera footage related to the underlying accident. *See* ECF Nos. 91, 92 ("Pl.'s Mem."), at 6-7. "Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008). By definition, therefore, "spoliation sanctions can be imposed *only when the party seeking such sanctions demonstrates that relevant evidence has been lost*." *La Belle v. Barclays Capital, Inc.*, 340 F.R.D. 74, 81 (S.D.N.Y. 2022) (emphasis added); *see also Leidig v. Buzzfeed*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) (finding that the defendant is not entitled to spoliation sanctions where it alleges that plaintiffs' discovery was "inadequate, but makes no claim that plaintiffs have 'lost' any of the [evidence]"); *Farella v. City of New York*, Nos. 05-CV-5711, 05-CV-8264 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) ("[F]or sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-

---

[5] Monserrate contends that that, if the Court grants Defendants' motion as to Dr. Sadegh, it should not preclude any portions of his testimony beyond the "commentary on a 'chasing maneuver' or 'road rage.'" Pl.'s Opp'n 11. That is the only portion of his testimony that Defendants seek to preclude.

after evidence *actually existed and was destroyed*."). That dooms Monserrate's motion here because the record indicates that Defendants produced the video footage at issue, albeit "after the completion of party depositions." Pl.'s Mem. 7.[6] Evidence that is belatedly discovered and disclosed is necessarily neither lost nor destroyed. Accordingly, Monserrate's motion for spoliation sanctions must be and is DENIED.[7]

That ruling resolves Defendants' motion *in limine* as well. *See* ECF No. 87. Defendants move to preclude Monserrate from offering certain evidence to the jury related to liability insurance — evidence that is tied to Monserrate's motion for spoliation sanctions. *See* ECF No. 90, at 2. Monserrate admits, however, that he "only intends to introduce [the evidence at issue] if the Court resolves plaintiff's motion *in limine* for sanctions in such a manner that it requires the jury to make a finding as to defendants' state of mind in spoliating or withholding video evidence." ECF No. 99, at 1-2. Because the Court's resolution of Monserrate's motion requires no such finding from the jury, Defendants' motion is GRANTED as unopposed.

---

[6] Monserrate's memorandum of law refers in passing to "destroyed evidence" and the fact that "defendants did not retain some amount of video from I-87" but, on their own, these conclusory references are plainly insufficient to warrant relief under Rule 37(e). Pl.'s Mem. 9; *see also* ECF No. 98 ("Defs.' Opp'n"), at 5-6 (noting that all relevant video evidence is captured in the preserved eight minutes of dash-camera footage).

[7] Monserrate moves only for spoliation sanctions under Rule 37(e). Accordingly, the Court need not and does not address whether the Defendants' belated production of the full dash-camera footage warrants some other form of sanctions. In any event, Defendants provide an explanation for their belated disclosure, *see* Defs.' Opp'n 6-8, and it does not appear that the belated production caused Monserrate any prejudice as his expert, Dr. Sadegh, appears to have had the full video in connection with the report that he produced, *see id.* at 7-8.

## CONCLUSION

For the reasons discussed, Defendants' *Daubert* motion and motion *in limine* are GRANTED, and Monserrate's motion *in limine* is DENIED. The Clerk of Court is directed to terminate ECF Nos. 73, 87, and 91.

SO ORDERED.

Dated: June 23, 2025
New York, New York

JESSE M. FURMAN
United States District Judge